# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Josephine Nieto, | § | CIVIL ACTION NO. 5:17-cv-00339 |
| | § | |
| Plaintiff | § | |
| v. | § | |
| | § | |
| Corrections Corporation of America, CCA | § | |
| of Tennessee, LLC, CoreCivic, Inc., and | § | |
| CoreCivic of Tennessee, LLC, | § | |
| | § | |
| Defendants. | § | |

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff Josephine Nieto, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this action for violations of the Fair Labor Standards Act against Defendants Corrections Corporation of America, CCA of Tennessee, LLC, CoreCivic, Inc., and CoreCivic of Tennessee, LLC.

## PRELIMINARY STATEMENT

1. Plaintiff brings this collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all other similarly situated night-shift residential supervisors employed by Defendants, seeking declaratory and monetary relief arising from Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

2. Defendants (hereinafter referred to collectively as "CCA" or "Defendants") constitute a single integrated enterprise that owns and operates correctional and detention facilities across the United States.

3. Until approximately October of 2016, Defendants did business as Correction Corporation of America. In October 2016, Correction Corporation of America began rebranding itself as "CoreCivic."

1

4. Defendants are repeated offenders of the FLSA and other state wage acts, and their employees have sued under collective actions in other jurisdictions. *See, e.g.*, *Roberts v. Corrections Corporation of America*, No: 3-14-cv-02009, (M.D. Tenn Oct 21, 2014).

5. Plaintiff and similarly situated employees worked as night-shift residential supervisors for Defendants at the South Texas Family Residential Center in Dilley, Texas, which houses undocumented immigrants on behalf of U.S. Immigration and Customs Enforcement.

6. Plaintiff has consented in writing to maintain this collective action pursuant to 29 U.S.C. § 216(b). *See* ECF 1-1, Plaintiff's Consent Form.

7. Plaintiff and similarly situated employees were victims of Defendants' common policy of not paying night-shift employees for all hours worked. Specifically, employees who worked the night shift between Saturday night and Sunday morning were not paid for any hours worked after 12:00 AM on Sunday. Defendants' managers referred to this illegal policy as the "midnight rule."

8. As a result, night-shift residential supervisors, including Plaintiff, were not paid for all hours worked, including hours in excess of forty (40) in a work week, in violation of the FLSA.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

10. In addition, this Court has jurisdiction over Plaintiff's collective action FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

11. Defendants' annual sales exceed $500,000 and Defendants have more than two employees. The FLSA therefore applies in this case on an enterprise basis.

12. This Court has personal jurisdiction over Defendants because they have availed themselves of the privilege of doing business within the state of Texas by operating the South Texas Family Residential Center in Dilley, Texas.

13. Venue is proper in this district pursuant to 28 U.S.C. 1391(b) because Defendants employ residential supervisors in this district, and a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

14. Plaintiff Josephine Nieto is a resident of San Antonio, Texas, and was employed by Defendants as an hourly paid residential supervisor from February 2016 to November 2016.

15. Defendant Corrections Corporation of America is a company registered in Delaware with its principal mailing address at 10 Burton Hills Blvd., Nashville, Tennessee 37215.

16. Defendant CCA of Tennessee, LLC is a company registered in Tennessee with its principal mailing address at 10 Burton Hills Blvd., Nashville, Tennessee 37215.

17. Defendant CoreCivic, Inc. is a company registered in Maryland with its principal mailing address at 10 Burton Hills Blvd., Nashville, Tennessee 37215.

18. Defendant CoreCivic of Tennessee, LLC is company registered in Tennessee and headquartered at 10 Burton Hills Blvd., Nashville, Tennessee 37215.

19. Defendants share common management, ownership, and financial control.

20. Defendants act as a single integrated enterprise in their employment of all employees working at the South Texas Family Residential Center in Dilley, Texas.

## GENERAL ALLEGATIONS

21. Plaintiff Josephine Nieto was employed by Defendants as an hourly paid residential supervisor from approximately February 2016 to November 2016.

22. Plaintiff typically worked five (5) shifts a week.

23. Plaintiff was scheduled to work from 10:00 PM to 6:00 AM of the subsequent day each shift.

24. Plaintiff typically finished most workdays at around 6:30 AM.

25. Plaintiff's most recent hourly rate was $16.00 per hour.

26. Plaintiff's pay stubs indicate that she was paid by Defendant CCA of Tennessee, LLC.

27. There were many workweeks in which Plaintiff and similarly situated night-shift residential supervisors worked in excess of forty (40) hours.

28. Plaintiff estimates that there are at least one hundred (100) night-shift residential supervisors who worked for Defendants at the South Texas Family Residential Center in Dilley, Texas (hereinafter "Dilley Center") between February 2016 and November 2016.

29. Plaintiff and similarly situated night-shift residential supervisors were responsible for monitoring the undocumented immigrants who reside at the Dilley Center.

30. Plaintiff did not have the authority to hire or fire other employees.

31. Plaintiff did not make suggestions or recommendations as to hiring, firing, advancement, or promotion of other employees that were given any particular weight.

32. Plaintiff did not manage general business operations and did not exercise discretion and independent judgment with respect to matters of significance.

33. Night-shift residential supervisors similarly situated to Plaintiff did not have the authority to hire or fire other employees.

34. Night-shift residential supervisors similarly situated to Plaintiff did not make suggestions or recommendations as to hiring, firing, advancement, or promotion of other employees that were given any particular weight.

35. Night-shift residential supervisors similarly situated to Plaintiff did not manage general business operations and did not exercise discretion and independent judgment with respect to matters of significance.

36. Residential supervisors log in at the beginning of their shifts by providing their thumbprints at the check-in front office of Dilley Center.

37. At the end of their shifts, residential supervisors log out by providing their thumbprints.

38. Residential supervisors similarly situated to Plaintiff are not permitted to leave work until their replacements arrive to take the next shift.

39. Plaintiff was not permitted to leave work until her replacements arrived to take the next shift.

40. On average, Plaintiff had to remain on duty for an additional 45 minutes after the end of each scheduled shift before she was relieved.

41. There are workweeks in which Plaintiff worked in excess of forty (40) hours.

42. There were many workweeks in which similarly situated residential supervisors worked in excess of forty (40) hours.

43. Plaintiff was paid every two (2) weeks.

44. Defendants furnished Plaintiff with pay stubs that identified her regular rates of pay, multiplied by the number of hours that Defendants represent was the amount of time she had worked during that pay period.

45. When Plaintiff worked from Saturday night to Sunday morning, Plaintiff was not paid for any time worked after midnight. All hours worked from 12:00 AM Sunday morning until the end of the shift are not paid.

46. Similarly situated residential supervisors who work from Saturday night to Sunday morning are not paid for any hours worked after 12:00 AM Sunday morning until the end of that shift.

47. Defendants' managers referred to the policy of not paying for hours worked after 12:00 AM Sunday as "the midnight rule."

48. Plaintiff worked between six and a half hours and seven hours after midnight each shift.

49. During workweeks in which Plaintiff's shifts covered Saturday night to Sunday morning, Plaintiff worked for between six and a half hours and seven hours without pay.

50. As a result, Plaintiff was not paid for many hours over the course of her employment, including hours worked in excess of forty (40) each week.

51. "The midnight rule" was uniformly applied to all night-shift residential supervisors at the Dilley Center.

52. As a result, all night-shift residential supervisors at the Dilley Center were not paid for many hours over the course of their employment, including hours worked in excess of forty (40) each week.

53. Below is an example of a specific workweek in which Defendants did not pay Plaintiff for all hours worked:

   a. In the workweek starting July 17, 2016, and ending July 23, 2016, Plaintiff worked five (5) shifts, including one shift from Saturday night to Sunday morning;

   b. On Sunday July 17, 2016, Plaintiff worked from 12:00 AM to approximately 6:30 AM, then again from approximately 10:00 PM to 12:00 AM. On this day, Plaintiff worked for approximately eight and a half (8.5) hours.

   c. On Monday July 18, 2016, Plaintiff worked from 12:00 AM to approximately 6:30 AM. On this day, Plaintiff worked for approximately six and a half (6.5) hours.

   d. Plaintiff did not work on Tuesday July 19, 2016.

   e. On Wednesday July 20, 2016, Plaintiff worked from approximately 10:00 PM to 12:00 AM. On this day, Plaintiff worked for approximately two (2) hours.

   f. On Thursday July 21, 2016, Plaintiff worked from 12:00 AM to approximately 6:30 AM, then again from approximately 10:00 PM to 12:00 AM. On this day, Plaintiff worked for approximately eight and a half (8.5) hours.

   g. On Friday July 22, 2016, Plaintiff worked from 12:00 AM to approximately 6:30 AM, then again from approximately 10:00 PM to 12:00 AM. On this day, Plaintiff worked for approximately eight and a half (8.5) hours.

   h. On Saturday July 23, 2016, Plaintiff worked from 12:00 AM to approximately 6:30 AM, then again from approximately 10:00 PM to 12:00 AM. On this day, Plaintiff worked for approximately eight and a half (8.5) hours.

   i. During the workweek starting July 17, 2016 and ending July 23, 2016, Plaintiff worked for approximately forty-two and a half (42.5) hours.

   j. Approximately two and a half (2.5) of Plaintiff's hours should have been compensated at the FLSA mandated overtime rate.

k.  The pay stub covering the two-week pay period that includes the above workweek indicates that Plaintiff was paid for 74.38 hours at her then regular rate of $24.04.

l.  Plaintiff was not compensated for approximately six and half (6.5) hours of work.

m.  Plaintiff was not compensated for any hours at the FLSA mandated overtime rate.

54. Night-shift residential supervisors at the Dilley Center, including Plaintiff, have complained to Defendants about not being paid for all hours worked. However, Defendants willfully failed to pay the employees' claimed unpaid wages and failed to repeal the unlawful "midnight rule" that results in employees not being paid for all hours worked.

55. Defendants' wrongful acts and omissions, as alleged herein, were not made in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor or any state department of labor, or any administrative practice or enforcement policy of such departments.

56. Defendants' violations of the above-described federal and state wage and hour statutes and regulations were willful, arbitrary, unreasonable, and in bad faith.

## COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this action pursuant to 29 U.S.C. §216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former residential supervisors of Defendants at the South Texas Family Residential Center in Dilley, Texas, who worked at least one night shift during the three years preceding the commencement of this action to present*

(hereinafter referred to as the "Collective"). Plaintiff reserves the right to amend this definition as necessary.

58. Excluded from the proposed Collective are Defendants' executive, administrative, and professional employees.

59. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

60. The employment relationships between Defendants and every Collective member are the same and differ only by name and rate of pay. The key issues—the amount of uncompensated hours owed to each residential supervisor—do no vary substantially among the Collective members.

61. The key legal issues are the same for every Collective member, to wit:

   a. Whether Collective members worked shifts that including working from Saturday night to Sunday morning;

   b. Whether Defendant failed to pay Collective members for the time they spend working after 12:00 AM on Sunday mornings;

   c. Whether Collective members are owed compensation at their regular rate for working after 12:00 AM on Sunday mornings, and if so, the appropriate amount thereof;

   d. Whether Collective members are owed compensation at their overtime rate for working after 12:00 AM on Sunday mornings, and if so, the appropriate amount thereof.

62. Plaintiff estimates the Collective will include at least one hundred (100) members. The precise number of Collective members should be ascertainable after a review of Defendants' personnel and payroll records.

# COUNT I
## (29 U.S.C. § 216(b) Collective Action)
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME

63. Plaintiff re-alleges and incorporates all previous paragraphs herein.

64. 29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

65. Plaintiff and other Collective members worked many workweeks in excess of forty (40) hours within the last three years.

66. At all times relevant to this action, Defendants failed to pay Plaintiff and other Collective members for all hours worked in excess of 40 in a workweek, including all hours worked after 12:00 AM on Sunday mornings which were improperly deducted by Defendants under their illegal "midnight rule."

67. In workweeks in which Plaintiff and other Collective members worked in excess of forty (40) hours, those hours over forty (40) should have been paid at the federally mandated rate of one and a half times each employee's regular hourly wage.

68. Plaintiff and other Collective members worked overtime hours which were not compensated because Defendants did not pay for all hours worked after 12:00 AM on Sunday mornings.

69. Defendants' violations of the FLSA were knowing and willful. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

70. Defendants knew or could have easily determined how many hours night-shift residential supervisors worked, including hours worked after 12:00 AM on Sunday mornings, and could have easily compensated Plaintiff and Collective members for that time. However, Defendants failed to compensate Plaintiff and Collective members for all hours worked.

71. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages, including unpaid overtime wages if applicable, plus an additional equal amount in liquidated damages, plus costs and reasonable attorneys' fees.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Josephine Nieto, requests entry of an Order granting the following relief:

- a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

- b. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, physical addresses, e-mail addresses, and phone numbers of all Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonable calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

- c. Designating Plaintiff as the representative of the FLSA collective action;

- d. Declaring that Defendants willfully violated the FLSA;

- e. Granting judgment in favor of Plaintiff and the Collective members and against Defendants and awarding Plaintiff and the Collective members the full amount of damages and liquidated damages available by law;

- f. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

- g. Awarding such other and further relief as this Court deems appropriate.

# JURY DEMAND

Plaintiff Josephine Nieto, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated: April 17, 2017

    Respectfully Submitted,
/s/ *Charles W Branham, III*
Charles W Branham, III
Rachel C. Moussa
**Dean Omar & Branham, LLP**
3900 Elm Street
Dallas, TX 75226
214/722-5990
Fax: 214/722-5991
Email: tbranham@dobllp.com
Email: rmoussa@dobllp.com

Nicholas Conlon
Jason T. Brown
JTB LAW GROUP, LLC
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (877) 561-0000
nicholasconlon@jtblawgroup.com
jtb@jtblawgroup.com
***Attorneys for Plaintiff***

# CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2017 a true and correct copy of the foregoing document was filed via ECF.

/s/ *Charles W Branham, III*
Charles W Branham, III